IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ANTWANN MILLER,

        Petitioner,

v.                                                         CIVIL ACTION NO. 2:19cv318

HAROLD W. CLARKE, Director,
Virginia Department of Corrections,

        Respondent.

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Antwann Miller's ("Petitioner") *pro se* Amended Petition for a Writ of Habeas Corpus ("the Petition") filed pursuant to 28 U.S.C. § 2254, ECF No. 42, and Respondent Harold W. Clarke's ("Respondent") Motion to Dismiss, ECF No. 53. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 53, be **GRANTED,** and the Petition, ECF No. 42, be **DENIED** and **DISMISSED WITH PREJUDICE.**

### I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is currently serving a thirty-five year sentence in the Virginia Department of Corrections ("VDOC") pursuant to the November 9, 2018 Final Order of the Circuit Court of the

City of Portsmouth, Virginia ("Trial Court"), following a jury trial in which Petitioner was convicted of two counts of rape, four counts of forcible sodomy, and one count of object sexual penetration. ECF No. 42 at 1; ECF No. 55, attachs. 1, 2. Petitioner was represented at trial by Stephanie Pough, Esq., and Elliot Moody, Esq., and on appeal by counsel, Elizabeth M. Wood ("Defense Counsel"). ECF No. 55 at 9; ECF No. 55, attachs. 1, 2.

Petitioner timely appealed to the Court of Appeals of Virginia, challenging the sufficiency of the evidence supporting his convictions because the victim's testimony was not credible and not corroborated. ECF No. 55, attach. 2 at 4. According to the factual findings of the Court of Appeals of Virginia, Petitioner's conviction arises out of the following factual background:

> K.M., appellant's daughter, testified that appellant began sexually assaulting her when she was twelve years old while they were living in North Carolina. The first incident involved appellant putting his fingers in her vagina. K.M. had just begun menstruating, and appellant told K.M. that he was trying to ease or prevent her menstrual cramps. At the time, however, K.M. did not have cramps.
>
> Eventually, K.M.'s family relocated to Portsmouth. K.M. lived there with appellant, her stepmother, and two brothers. When she was thirteen, appellant used a pink dildo to penetrate K.M.'s vagina. Appellant also put his fingers in her vagina. The incidents of sexual assault occurred more than two times. During the abuse, appellant made K.M. say that she was his 'whore.'
>
> K.M. was afraid to tell anyone about the abuse. She feared appellant would harm her if she revealed his behavior to anyone. Appellant struck K.M. once because he thought that she was having sex with a boy; K.M. also had seen appellant beat her brothers. In addition, appellant injured K.M.'s wrist when she was fourteen.
>
> After K.M. turned fourteen, appellant sexually assaulted her about three times per week during the night. On more than one occasion, appellant put his fingers and his penis in her vagina. Appellant also penetrated K.M.'s vagina with his tongue and put his penis in her mouth. Appellant called the substance that came out of his penis 'protein,' and he told K.M. to swallow it. Appellant would direct K.M. to go 'wash up' after he assaulted her. K.M. was still afraid of what appellant would do if she reported him. At one point, appellant took K.M. to be tested for a sexually transmitted disease. Appellant paid cash for that doctor's appointment.

2

By the time K.M. was fifteen, appellant was sexually abusing her almost every day. Appellant penetrated the victim's vagina with his fingers and penis. Appellant also penetrated her vagina with his tongue and put his penis in her mouth.

In June of 2017, K.M. told her boyfriend, Tlarence Drake, about her father's abuse. Drake tried to get K.M. to report the matter, but she was still afraid. Drake gave K.M. a cell phone to maintain contact between them.

On June 11, 2017, Drake showed the police some text messages K.M. had sent him. Acting upon information in the messages, the police went to K.M.'s home. When questioned, K.M. told the police that appellant had sexually assaulted her. She indicated that he often put his finger in her vagina, ostensibly to ease her menstrual cramps. She also said appellant had put his penis inside her.

K.M. told Kiara Parker, the social worker who was called to the scene, that the interaction with appellant began when she reached puberty at around the age of thirteen. K.M. told Parker that appellant put his finger into her vagina every night in her bedroom. Appellant had told K.M. that he was 'doing it' because he was in a 'bad place' and facing financial issues.

After the police became involved, appellant called K.M. even though he had been ordered to have no contact with her. Appellant told K.M. both on the phone and in person to stop talking to the police, to let the family handle it, and that she was lying just to get attention. Family members blamed K.M. and made her feel that she had done something wrong.

During a forensic interview on June 21, 2017, K.M. said that appellant had put a 'pink thing' she identified as a 'sex toy' in her vagina and that he had rubbed her vagina with ointment. She called her vaginal area her 'no no place.' K.M. stated that appellant also had placed his penis in her mouth. Even though she did not have menstrual cramps, appellant placed his fingers in her vagina, he claimed, to prevent cramps. K.M. told the interviewer that she did not like it when appellant put his penis in her mouth; appellant referred to his ejaculate as 'protein' and told her to swallow it. During these incidents of sexual abuse, appellant made the victim state that she was his 'whore.'

When the social worker interviewed appellant, he said that he had touched K.M.'s 'no no' area with ointment because she complained of dryness. When the police questioned appellant on June 29, 2017, he said that he had looked at K.M.'s vaginal area multiple times when she was thirteen to fifteen years old because she complained that it was hurting. He said that he put ointment on her vaginal area multiple times. Appellant stated that he had done so as recently as a month before the interview.

Dr. Michelle Clayton, the medical director of the child abuse program at the Children's Hospital of the King's Daughters, testified that there was no medical test

3

> to determine if a person has had chlamydia in the past. Clayton stated that it was common for victims of sexual child abuse to delay reporting it, especially when the abuser was a close family member.
>
> Testifying in his own behalf, appellant said that on June 10, 2017, he found K.M. with a cell phone she was not allowed to have. On the phone, appellant found social media accounts and explicit photographs of K.M. Appellant claimed that all of K.M.'s allegations of sexual abuse were false and that he believed that K.M.'s relationship with Drake had caused her to lie. He also claimed that he suffered from erectile dysfunction. Appellant admitted looking at K.M.'s vagina once because it was troubling her, and putting ointment on it another time. Appellant denied that he ever 'smacked' K.M.

ECF No. 55, attach. 2 at 1–4. Petitioner's appeal to the Court of Appeals of Virginia was denied on October 28, 2019. *Id.* at 1.

On March 4, 2015, Petitioner timely filed a petition for appeal in the Supreme Court of Virginia. The petition for appeal to the Supreme Court of Virginia claimed one assignment of error:

> That [t]he Court of Appeals erred when it affirmed the trial court's decision to overrule to motion to strike based on the fact that no rational trier of fact could have found Appellant guilty since there was no forensic evidence, no witnesses corroborated the victim's testimony, and Appellant had credible reasons for why he may have engaged the victim in sexual behavior.

*Antwann Miller v. Commonwealth of Virginia*, Record No. 191514 (Va. Nov. 12, 2019). The Supreme Court of Virginia refused the petition for appeal on June 30, 2020. *Antwann Miller v. Commonwealth of Virginia*, Record No. 191514 (Va. June 30, 2020); ECF No. 55, attach. 3.

On June 17, 2019, Petitioner submitted an action he styled as a "Petition for Writ of Mandamus." ECF No. 1. Eventually, following a Court Order to file an Amended Petition for habeas relief, ECF No. 39, Petitioner filed a Section 2254 Amended Petition, ECF No. 42, on January 29, 2021. In the Amended Petition, Petitioner raised the following claims:

> (a) Objections were not lawfully adhered and were factually excluded from my appeal brief by ineffective court appointed counsel, Elizabeth M. Wood. To include, that Ms. Wood were informed to add my timely submissions verifying

4

>objections via email and[/]or, hand-delivered to her Portsmouth office by my wife, Latisha Trene Miller. But she did not lawfully adhere and I was instead met with Wanton. All submissions to the Federal Court Building verify this issue in great detail. As per the submission of this packet, I have never met with this Ms. Wood, in no formal setting to confirm in-court verbage, even when instructed to formally meet with me, but she did not and therefore, ineffective. (ECF No. 42 at 16–17).
>
>(b) No signature of any kind were ever produced to secure a contract agreement to the July 23, 2018 to November 7, 2018 new trial date due to a factual unrelated civil issue. Amendments to this court will adamantly detail with transcripts; that I vehemently sought relief and dismissal only for violations to the Sixth Amendment of the U.S. Constitution and Virginia Codes §§ 19.2-243 and 266.2, for a speedy trial and remedy to Defendant, Kenneth R. Melvin demonstrated wanton; to supersede a unrelated civil issue over my scheduled Jury Trial and therefore, violating (willfully) Virginia Code § 19.2-241. Please reference this civil issue (CL17000991-00) that were objected by then defendant, Antwann Miller, either verbally in court, motions and[/]or notices with exhibits. Again, this objection were not added and excluded by ineffective court appointed counsel, Elizabeth M. Wood, purposely. Amendments to this court will verify this in great detail.
>
>(c) Objection to the June 26, 2018 to July 23, 2018 continuance due to absent witness that Commonwealth could not location. Objection were indeed made timely with urgency before, during, and after new trial date of November 7, 2018, verbally in court, multiple motions, notices with exhibits that constantly expressed lawful concerns.
>
>(d) Due to continuous and multiple unrebutted affidavits and[/]or motions and notices with exhibits to dismiss, declarations for entry of default and motion for default judgment were composed by me and submitted to this court. Due to noncontested affidavits pertaining to the remedy sought for a simple constitutional (guaranteed) right being violated with prejudice, that is, when made timely and documented for the trial court record. There were no rebuttals made by Defendant, Kenneth R. Melvin, et al, seemingly to conscientiously accepting fault of his actions that were detailed point-by-point, therefore, he admits guilt by "nil dicit."

ECF No. 42 at 13–36. Thus, the Court interprets the Amended Petition to argue that he is entitled to habeas relief because (1) his speedy trial rights under Va. Code §§ 19.2-243 and 266.2 were violated ("Claim 1(a)"); (2) his speedy trial rights under the United State Constitution were violated ("Claim 1(b)"); (3) Defense Counsel was ineffective for failing to meet with him ("Claim

5

2(a)")[1]; and (4) Defense Counsel was ineffective for failing to raise his speedy trial objections during the pendency his direct appeal ("Claim 2(b)"). *Id.*

On June 24, 2021, Respondent filed a Motion to Dismiss, a Rule 5 Answer, a Brief in Support of the Motion to Dismiss, and *Roseboro* Notice. ECF Nos. 53–56. Petitioner then filed his first "Request for Entry of Default" on July 8, 2021. ECF No. 58. On July 16, 2021, Petitioner filed a Motion for Extension of Time to file a response to Respondent's Motion to Dismiss. ECF No. 60. On July 28, 2021, Petitioner filed a "Motion for Stay and Abeyance," ECF No. 61, along with an Affidavit, ECF No. 60. Respondent did not to respond to Petitioner's Motion for Extension of Time within the allotted fourteen days, and so, unclear if Petitioner's July 28, 2021, filings were meant to constitute an opposition or other response to the Motion to Dismiss,[2] the Court granted the Motion for Extension and extended Petitioner's time to respond to August 23, 2021. ECF No. 63. Petitioner filed no further response by that date. He did, however, file a "Declaration for Entry of Default" on September 30, 2021. ECF No. 64. Accordingly, the instant Amended Petition and Motion to Dismiss are ripe for recommended disposition. Additionally, the two requests for entry of default, ECF No. 58, 64, and the "Motion for Stay and Abeyance," ECF No. 61, will also be addressed in turn.

## II. RESPONDENT'S MOTION TO DISMISS (ECF NO. 53)

A. <u>Exhaustion and Procedural Default Standard</u>

Before considering the merits of a federal habeas petition, the preliminary inquiry must be whether Petitioner appropriately exhausted the claims asserted in the Petition, and/or whether

---

[1] Respondent does not identify Claim 2(a) as raised by Petitioner, which the Court understands given the convoluted nature of the Amended Petition. However, out of an abundance of caution, the Court will recognize Claim 2(a) as a claim raised by Petitioner.
[2] In his "Motion for Stay and Abeyance," Petitioner referred to the Affidavit he filed at the same time, ECF No. 62, as a "Rebuttal to the Motion to Dismiss from Respondent's Counsel." ECF No. 61 at 1. Based on this representation, the Court thus considers Petitioner's Affidavit as his opposition to Motion to Dismiss.

6

Petitioner has procedurally defaulted on his claims such that these claims are simultaneously exhausted and defaulted for purposes of federal habeas review.

*1. Exhaustion*

Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd in Pruett v. Thompson*, 996 F.2d 1560 (4th Cir. 1993). "Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition." *Moody v. Dir., Va. Dep't of Corr.*, 2016 WL 927184, at *3 (E.D. Va. Mar. 3, 2016), *appeal dismissed*, 669 F. App'x 160 (4th Cir. 2016) (citing *Duncan v. Henry*, 513 U.S. 364 (1995)).

*2. Procedural Default*

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. As the Fourth Circuit has explained, the procedural

7

default doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* at 619 (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)); *see also Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006) ("A federal claim is deemed procedurally defaulted where 'a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule.' . . . A federal court cannot review a procedurally defaulted claim unless the prisoner can demonstrate cause and prejudice for the default or a fundamental miscarriage of justice" (quoting *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998)) (internal citations omitted). As the Supreme Court recently observed, "[t]he procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)).

Additionally, a petitioner seeking federal habeas relief also procedurally defaults his claims when he "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). When considering a petition for federal habeas corpus, § 2254(d) mandates that a state court's finding of procedural default be presumed correct, provided that the state court relied explicitly on procedural grounds to deny petitioner relief and that the procedural rule relied on is an independent and adequate state ground for denying relief. *See Ford v. Georgia*, 498 U.S. 411, 423–24 (1991) (explaining that "an adequate and independent state procedural bar to the entertainment of

8

constitutional claims must have been 'firmly established and regularly followed' by the time as of which it is to be applied") (citing *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)).

Absent a showing of cause for the default and prejudice or a fundamental miscarriage of justice (such as actual innocence), this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989); *see also Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (explaining that "a petitioner may nonetheless overcome procedural default, and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review") (citing *Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)). The Fourth Circuit has held that "[t]o establish cause, a petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Hedrick*, 443 F.3d at 366 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)); *see also Davila*, 137 S. Ct. at 2065 ("A factor is external to the defense if it 'cannot fairly be attributed to' the prisoner.") (quoting *Coleman*, 501 U.S. at 753). "This requires a demonstration that 'the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding.'" *Hedrick*, 443 F.3d at 366 (quoting *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999)). "Importantly, a court need not consider the issue of prejudice in the absence of cause." *Booker v. Clarke*, 2016 WL 4718951, at *5 (E.D. Va. Sept. 8, 2016), *appeal dismissed*, 678 F. App'x 152 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 234, 199 L. Ed. 2d 152 (2017), *reh'g denied*, 138 S. Ct. 538, 199 L. Ed. 2d 414 (2017) (citing *Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996)).

B. <u>Analysis</u>

   *1. Claim 1(a) – Petitioner's claim that his speedy trial rights under the Virginia Code were violated is not cognizable in federal habeas review.*

Petitioner's claim that the Trial Court violated his speedy trial rights under Va. Code §§ 19.2-243 and 266.2 is not cognizable in federal habeas relief. "A state prisoner is entitled to relief under § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Billotti v. Legursky*, 975 F.2d 113, 119 (4th Cir. 1992) (quoting *Engle v. Isaac*, 456 U.S. 107, 109 (1982)). Thus, questions of state law that do not implicate federal rights are not cognizable on federal habeas review. *Id.* (citing *Inge v. Procunier*, 758 F.2d 1010, 1014 (4th Cir. 1985). Because the question of whether Petitioner's speedy trial rights under the Virginia Code does not implicate any federal rights, Claim 1(a) is not cognizable in federal habeas review. *See, e.g., Slavek v. Hinkle*, 359 F. Supp. 2d 473, 494 (E.D. Va. 2005) ("[Petitioner's] challenge to the Commonwealth's application of its own speedy trial act, a state law claim, is not reviewable here on federal habeas review."). Accordingly, the undersigned **FINDS** that Claim 1(a) is not cognizable in federal habeas review, and **RECOMMENDS** that Claim 1(a) be **DISMISSED**.

   *2. Petitioner did not exhaust Claim 1(b) and Claims 2(a) and (b), and those claims are now procedurally defaulted.*

Petitioner has not exhausted Claim 1(b) and Claims 2(a) and (b) because he did not raise these claims on direct appeal or in a state habeas petition. The situation presented is simultaneous exhaustion and procedural default, which "occurs when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present her claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). Here, Petitioner did

10

not exhaust his claims, and Claim 1(b) and Claims 2(a) and 2(b) would now be procedurally barred pursuant to Virginia law.

If Petitioner were to raise Claim 1(b) in a state habeas petition to exhaust his post-conviction remedies, the claim would be procedurally barred because he could have presented his federal constitutional speedy trial claim on direct appeal, but did not do so. *Burket v. Angelone*, 208 F.3d 172, 182 (4th Cir. 2000). In Virginia, "a claim that could have been raised at trial or on direct appeal, but was not, is not cognizable on state habeas." *Slayton v. Parrigan*, 215 Va. 27, 205 (Va. 1974). Thus, if Petitioner were to now file a state habeas petition raising Claim 1(b), it would be dismissed pursuant to *Slayton v. Parrigan*. *See Burket*, 208 F.3d at 182.

If Petitioner were to raise Claims 2(a) and 2(b) in a state habeas petition to exhaust his post-conviction remedies, those claims would be procedurally barred because the state habeas petition would be untimely pursuant to Virginia Code § 8.01-654(A)(2). In Virginia, a state habeas petition must be filed "within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Va. Code. § 8.01-654(A)(2). Petitioner filed a direct appeal to the Court of Appeals, and the Supreme Court of Virginia. The Supreme Court of Virginia entered its final judgment on June 30, 2020, making Petitioner's deadline to file a state habeas petition June 30, 2021. Accordingly, if Petitioner filed a state habeas petition now, it would be dismissed as untimely.

Both *Slayton v. Parrigan* and Virginia Code § 8.01-654(A)(2) are adequate and independent state law grounds, making Claim 1(a) and Claims 2(a) and (b) simultaneously exhausted but procedurally defaulted. *Burket v*, 208 F.3d at 191 (explaining that *Slayton v. Parrigan* is an adequate and independent state law ground); *Sparrow v. Dir., Dep't of Corr.*, 439

11

F. Supp. 2d 584, 587 (E.D. Va. 2006) (explaining that Va. Code § 8.01-654(A)(2) is an adequate and independent state law ground).

### 3. *Petitioner did not show cause and prejudice or a fundamental miscarriage of justice to overcome procedural default.*

Petitioner may overcome the procedural default and have Claim 1(b) and Claims 2(a) and (b) addressed on the merits if he "is able to demonstrate cause and prejudice for the default or demonstrate that failure to review the claim[] will result in a fundamental miscarriage of justice." *Edwards v. Johnson*, 2010 WL 5825427, at *3 (E.D. Va. Dec. 15, 2010) (citing *Coleman*, 501 U.S. at 750; *Savino*, 82 F.3d at 602. "[C]ause" refers to "some objective factor external to the defense [that] impeded counsel's [or the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "[I]n order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999); *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (explaining that a claim of actual innocence is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits"). To state such a claim of actual innocence, "the petitioner must satisfy a 'rigorous' burden by 'support[ing] his allegations of constitutional error with new reliable evidence.'" *Smith v. Warden*, 2017 U.S. Dist. LEXIS at *4 (W.D. Va. June 26, 2018) (alteration in original) (quoting *Schulp*, 513 U.S. at 324).

Here, Petitioner does not demonstrate cause for his failure to comply with the State's procedural rule. With respect to Claim 1(b), Petitioner contends that he did not raise this issue on appeal because the Judge who presided over his case in the Trial Court "was made aware of these issues with either verbal objections in court, timely motions, and notices with exhibits . . . and did

not correct his plain errors" and that Defense Counsel, Ms. Wood, did not make the objections to continuances that Petitioner asked her to make on his behalf. ECF No. 42 at 21, 24. With respect to Claims 2(a) and (b), Petitioner contends that he did not raise these issues on direct appeal because the Trial Court Judge did not give him the relief he requested and did not correct his errors, ECF No. 29, 31, and because he raised the issues in his habeas petition in federal court, ECF No. 34. Petitioner's explanations do not offer any "objective factor[s]" that impeded Petitioner's efforts to raise these claims on direct appeal or in a timely state habeas petition. *See Strickler*, 527 U.S. at 283 n.24. Therefore, Petitioner failed to overcome procedural default because he did not present argument regarding some objective factor external to the defense that impeded his efforts to comply with the rule. *Accord Strickler*, 527 U.S. at 283 n.24. Absent cause, a prejudice analysis is unnecessary. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995) (noting that courts should not consider the issue of prejudice absent cause to avoid the risk of reaching an alternative holding).

Though Petitioner intermittently asserts vague allegations of innocence in his briefs, he does so without any supporting evidence, let alone any allegation of new reliable evidence. *See e.g.*, ECF No. 42 at 1 (arguing that Petitioner's indictments are "unfounded and not true."). Without any supporting evidence, Petitioner cannot demonstrate a fundamental miscarriage of justice because conclusory statements of actual innocence are insufficient, and he offers no argument, new reliable evidence, or factual contentions to substantiate such a claim. *Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir. 1999) ("In order to use an actual innocence claim as a procedural gateway to assert an otherwise defaulted claim, 'the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the *new evidence*.'") (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)) (emphasis added).

Because federal courts may not review claims which would be procedurally defaulted in state court based on adequate and independent state-law grounds, this Court must decline to consider the merits of Claim 1(b) and Claims 1 (a) and (b). *See Breard*, 134 F.3d at 621. Thus, the undersigned **FINDS** that Claim 1(b) and Claims 2(a) and (b) are procedurally defaulted without any demonstration of cause for the defaults, or evidence of actual innocence to prevent a miscarriage of justice. Accordingly, the undersigned **RECOMMENDS** that Claim 1(b) and Claims 2(a) and (b) be **DISMISSED**.

### III. OTHER OUTSTANDING DISPOSITIVE MOTIONS (ECF NOS. 58, 64)

After filing his Amended Petition and after Respondent filed the Motion to Dismiss, Petitioner filed two motions for entry of default. ECF Nos. 58, 64. Petitioner's first motion for entry of default appears to suggest that the Court enter default on the grounds that the Respondent did not respond to the Petition or other "interrogatories" submitted by Petitioner. ECF No. 58. In a similar vein, Petitioner's second motion for entry of default appears to suggest that the Court enter default on the grounds that Respondent did not respond to Petitioner's "rebuttal" to the motion to dismiss, or Petitioner's motion for stay and abeyance.[3] ECF No. 64. Here, Respondent did in fact timely respond to the Petition, *see* ECF No. 53, 55, and Petitioner is not entitled to any interrogatory responses from Respondent absent leave of court. *Harrison v. Clarke*, No. 2:14cv467, 2015 WL 13081206, at *3 (E.D. Va. May 15, 2015) (noting that a habeas petitioner is not generally entitled to discovery absent good cause and leave of court), *report and recommendation adopted*, No. 2:14cv467, 2015 WL 13079297 (E.D. Va. Aug. 11, 2015). Accordingly, the undersigned **RECOMMENDS** that Petitioner's motions for entry of default,

---

[3] Petitioner also submitted a document that was docketed as an "Amendment to Amended Petition." ECF No. 59. However, that document appears to be further argument in support of Petitioner's arguments that the Court should enter a default judgment. *See* ECF No. 59. The undersigned has considered this submission in reviewing Petitioner's Amended Petition and requests for entry of default.

ECF Nos. 58, 64, be **DENIED**.

## IV. REMAINING NON-DISPOSITIVE MOTION (ECF NO. 61)

Petitioner also filed a Motion for Stay and Abeyance, ECF No. 61, in which he seeks a stay of the Amended Petition such that Petitioner can exhaust his claims at the Virginia Supreme Court. ECF No. 61 at 2. A motion for stay and abeyance is often used where a petitioner presents both exhausted and unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 274–75 (2005). The district court may stay a petition while the petitioner exhausts all of his claims in state court, allowing the petitioner to avoid any expiration of statute of limitations in federal court, and allowing a petitioner to avoid losing any federal review of his claims. *Id.* "However, 'granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts,' which is 'only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Sparks v. Clarke*, No. 3:15CV482, 2015 WL 10457211, at *3 (E.D. Va. Nov. 17, 2015), *report and recommendation adopted*, No. 3:15CV482, 2016 WL 1054721 (E.D. Va. Mar. 10, 2016). As explained above in section II.B.3, *supra*, Petitioner has not demonstrated cause for failing to exhaust his claims. Though Petitioner's Motion for Stay and Abeyance references certain delays due to Petitioner's health concerns, Petitioner does not explain, and it is not clear to the Court how those health concerns prevented Petitioner from exhausting his state court remedies. Therefore, Defendant's motion for stay and abeyance, ECF No. 61, is **DENIED**.

## V. RECOMMENDATIONS AND CONCLUSIONS

For these reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 53, be **GRANTED**; and that Petitioner's motions for entry of default, ECF Nos. 58 and 64, be **DENIED**; and the Amended Petition, ECF No. 42 be **DENIED** and **DISMISSED WITH PREJUDICE**. The undersigned further **DENIES** Petitioner's Motion for Stay and

Abeyance, ECF No. 61.

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner and to counsel for Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
January 20, 2022

/s/
Lawrence R. Leonard
United States Magistrate Judge